**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MELISSA M.,[1] | Case No. 5:24-cv-02696-MAA |
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER REVERSING DECISION OF THE COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |
| FRANK BISIGNANO,[2] Commissioner of Social Security, | |
| Defendant. | |

## I.    INTRODUCTION

On December 20, 2024, Plaintiff Melissa M. ("Plaintiff") filed a Complaint seeking review of Defendant Commissioner of Social Security's ("Commissioner" or "Defendant") final decision denying her application for supplemental security income under Title XVI of the Social Security Act.  (Compl., ECF No. 1.)  Pursuant

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.  The Court notes that Plaintiff's first name appears as "Mellissa" in some records, but uses the spelling that appears in the caption of the Complaint.
[2] Frank Bisignano became Commissioner of Social Security on May 6, 2025.  Under Federal Rule of Civil Procedure 25(d), he is automatically substituted as Defendant in this suit.

to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of a United States Magistrate Judge. (ECF Nos. 9, 10.) On March 27, 2025, Defendant filed an Answer (Answer, ECF No. 14) and Certified Administrative Record ("AR," ECF Nos. 14-1–14-21). On April 28, 2025, Plaintiff filed a Brief. (Pl.'s Br., ECF No. 15.) On May 19, 2025, Defendant filed a Response Brief. (Def.'s Br., ECF No. 17.) Plaintiff did not file a Reply Brief. This matter is fully briefed and ready for decision.

The Court deems the matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons discussed below, the Court reverses the decision of the Commissioner and remands the matter for further administrative proceedings.

## II.   SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On March 6, 2018, Plaintiff filed an application for supplemental security income, alleging disability beginning January 18, 2018. (AR 324–29.) Plaintiff alleged that she was disabled due to neck and back problems, diabetes II, heart problems, left arm problems, asthma, and arthritis. (AR 120.) The Commissioner denied the application on April 26, 2018 (AR 170–73), and again upon reconsideration on August 21, 2018 (AR 177–79). On August 28, 2018, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 180–82.) After a May 27, 2020 telephonic hearing (AR 53–82), ALJ John Cusker issued a decision on October 2, 2020, finding that Plaintiff was not disabled (AR 148–63).

On October 22, 2020, Plaintiff filed a request for review (AR 265–66), which the Appeals Council granted on January 21, 2021 (AR 164–67). On June 9, 2021, a telephonic hearing on remand was held before ALJ Kelly Walls. (AR 33–52.) Plaintiff—who was not represented by counsel—and a vocational expert testified. (*Id*.) In a decision dated September 1, 2021, ALJ Walls denied Plaintiff's application. (AR 12–32.) On August 29, 2022, the Appeals Council denied

Plaintiff's request for review.  (AR 1–5.)  Plaintiff filed a civil action in this Court on January 24, 2023, which the undersigned remanded to the Social Security Administration after finding that the ALJ did not provide specific, clear, and convincing reasons for rejecting Plaintiff's subjective symptom allegations. *Melissa M. v. Kijazaki*, Case No. 5:23-cv-00119-MAA (C.D. Cal. Aug. 23, 2023), ECF No. 15.

On remand, an additional telephonic hearing was held on July 5, 2024 before ALJ Walls.  (AR 1475–1502.)  The ALJ heard testimony from Plaintiff, who at this hearing was represented by counsel, and from an impartial vocational expert.  (*See* AR 1478.)  On August 27, 2024, ALJ Walls, after making the following findings under the Commissioner's five-step evaluation process, issued a decision finding that Plaintiff was not disabled from January 18, 2018 through March 18, 2023, but became disabled on March 19, 2023, when Plaintiff's age category changed from an individual closely approaching advanced age to an individual of advanced age.  (AR 1445–74.)

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 18, 2018.  (AR 1452 ¶ 4.)  At step two, the ALJ found that Plaintiff had the following severe impairments:  "cervical and lumbar degenerative disc disease; degenerative joint disease of the right elbow, right shoulder, and bilateral knees; chronic obstructive pulmonary disease; asthma; coronary artery disease, status post stenting; diabetes mellitus, type 2 with neuropathy; and carpal tunnel syndrome."  (*Id.* ¶ 5.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the agency's listed impairments.  (AR 1453 ¶ 6.)  Next, the ALJ found that Plaintiff had the following Residual Functional Capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)

and 416.967(b) except she can sit for 6 hours in 8-hour day and stand and/or walk for 4 hours in an 8-hour day. She can frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, and crouch. She can never crawl. She can occasionally reach overhead and frequently reached and all of the directions. She can frequently handle, finger, and feel. She must avoid concentrated exposure to vibration; pulmonary irritants, like chemicals, odors, dust, fumes, and gases; and hazards, like dangerous moving machinery and unprotected heights.

(AR 1454 ¶ 7.)

At step four, the ALJ found that Plaintiff had no past relevant work. (AR 1458 ¶ 8.) The ALJ found that, "[p]rior to March 19, 2023, the date the claimant's age category changed to advanced age, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (AR 1459 ¶ 12.) The ALJ further found, however, that "[b]egining on March 19, 2023, the date the claimant's age category changed to advanced age, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant could perform." (AR 1460 ¶ 13.) The ALJ concluded that Plaintiff "was not disabled prior to March 19, 2023, but became disabled on that date" and continued to be disabled through the date of the ALJ's decision. (*Id.* at ¶ 14.) Plaintiff now seeks review of the ALJ's finding that Plaintiff was not disabled prior to March 19, 2023 (Compl. 4), which the parties agree is the final decision of the Commissioner (Pl.'s Br. 3; Def.'s Br. 2.)

///

///

///

4

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the Court reviews the Commissioner's final decision to determine whether the Commissioner's "decision to deny benefits . . . 'is not supported by substantial evidence or is based on legal error.'" *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009–10 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1035). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). "If the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

## IV.   DISCUSSION

### A.   Disputed Issue

The single disputed issue is whether the ALJ articulated clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's pain and limitation testimony. (Pl.'s Br. 5.[3]) Plaintiff argues that the ALJ did not provide a

[3] Except for citations to the Administrative Record, pinpoint citations to docketed documents refer to the page numbers in the CM/ECF-generated headers.

sufficiently articulated rationale for rejecting her subjective symptom testimony. (*See generally id*.)  Defendant asserts that substantial evidence supports the ALJ's analysis of Plaintiff's subjective statements.  (*See generally* Def.'s Br.)

### B.    Applicable Law

When assessing a claimant's credibility regarding subjective symptom testimony or allegations, the ALJ must engage in a two-step analysis.  *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Garrison*, 759 F.3d at 1014 (quoting *Lingenfelter*, 504 F.3d at 1035–36).  "In this analysis, the claimant is not required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'"  *Id*. (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'"  *Id*. (quoting *Smolen*, 80 F.3d at 1282).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity.  *Id*. at 1014–15; *see also Robbins*, 466 F.3d at 883 ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").  "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'"  *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).  The ALJ must evaluate "the intensity and persistence of those symptoms to determine the extent to which the symptoms

6

limit [the claimant's] ability to perform work-related activities for an adult . . . ." Social Security Ruling 16-3p, 2016 SSR LEXIS 4, at *4 (Mar. 16, 2016).

While the ALJ cannot "delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness," *Trevizo*, 871 F.3d at 678 n.5, the ALJ may consider "prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; . . . unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and . . . the claimant's daily activities," *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Smolen*, 80 F.3d at 1284). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. *Burrell v. Colvin*, 775 F.3d 1133, 1137–38 (9th Cir. 2014). In addition, the ALJ may consider "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms . . . ." *Smolen*, 80 F.3d at 1284. However, it is improper for an ALJ to reject subjective testimony based "'solely on a lack of objective medical evidence to fully corroborate' the claimant's allegations." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)).

The ALJ must make "a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)); *see Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" (quoting

7

*Bunnell*, 947 F.2d at 345–46)).  Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

### C.   Plaintiff's Statements

#### 1.   May 27, 2020 Hearing

Plaintiff testified at three hearings before two ALJs with respect to the instant application for benefits.  During the May 27, 2020 hearing, Plaintiff testified in part as follows:

She did not have health insurance and sought primary care treatment from the emergency room.  (AR 60.)  She has at most a ninth-grade education, having dropped out of school when her mother died.  (AR 63).  The only job she had held consistently at any point in the 15 years prior to the hearing was at Subway, where she made sandwiches, "filled and swept and mopped and got drinks and stuff." (*Id.*)  In this position, she did not have to lift and carry over 20 pounds.  (AR 64.) In filing for disability, she stated that she was unable to work because of neck and back problems, diabetes type 2, left arm problems, asthma, and arthritis.  (*Id.*)  She had been moving around between hotels and staying with family members and was trying to get an apartment.  (AR 65.)  She lived with her 15-year-old daughter and 26-year-old son, and, at the time of the hearing, her sister and her sister's grandson. (*Id.*)

She was able to dress and bathe herself without help, was able to prepare meals, and did limited chores.  (AR 66.)  She could not walk up a hill without having to stop.  (AR 67.)  She had no hobbies and spent her time watching TV and trying to figure out what to make for meals.  (*Id.*)  She had problems walking, and when asked by the ALJ, "how far can you walk?" stated "I would say that every five minutes I've got to stop five/ten minutes.  It depends on the grade I'm

walking." (*Id.*)  The ALJ apparently misheard Plaintiff and asked, "Did you say 25 minutes?" to which Plaintiff responded, "I have to sit down.  I would say like every ten minutes.  Twenty-five minutes I would definitely have to stop because my left leg starts giving out." (AR 67–68.)  She could bend at the waist, but it was hard to get back up without help or something to grab onto.  (AR 68.)  The heaviest thing she could lift was a gallon of milk.  (*Id.*)  She could only sit for 25–30 minutes before having to get up and walk around, or her legs and feet would start to go numb.  (*Id.*)  Sometimes her right hand and left arm and hand go numb. (*Id.*)

### 2.      June 9, 2021 Hearing

During the June 9, 2021 hearing, Plaintiff testified about her problems and limitations as follows:

She is unable to work because she has difficulty lifting, carrying, walking, and sitting.  (AR 43.)  This difficulty is caused by "neck and low back degenerating discs"—one is a herniated disc and one is a bulging disc.  (*Id.*)  In response to the question of what this feels like, Plaintiff stated "[t]ingling and sometimes numbness and then [her] sciatic is in distress." (*Id.*)  In response to the question of whether she has any difficulty driving, she responded "[n]o, I just don't drive very much . . . [b]ecause if I am out too long on my feet and all that stuff it starts hurting my back." (AR 42.)

Her diabetes medications have changed, and her medications will change again once she gets blood work back.  (AR 44.)  She has a stent in her right arm from having a heart attack and has medication for that too.  (*Id.*)  She had some pain with the cardiac issues, but the doctor took her off a couple of medications that they had her on too long.  (AR 45.)  She sometimes gets sleepy from her medication. (AR 44.)

In a typical day, she gets up and has to move around to get her body going. (AR 46.)  She makes coffee and breakfast and does whatever activities she needs to

do for the day like shopping or going to the doctor.  (AR 46–47.)  She does not have difficulty getting dressed or taking a shower; that difficulty was just related to the heart attack, because afterwards she was not standing on her feet enough.  (AR 47.)

She has difficulty performing chores around the apartment because she cannot lift and carry too long; she has to sit down.  (AR 47.)  She cannot "go 20 minutes or 25/30 minutes" and then has to sit down because her lower back starts screaming at her like somebody kicked her.  (*Id.*)  The muscles in her legs "start jumping."  (*Id.*)  She does not have to use a cane or anything else to help her walk, if she can sit and relax a minute, lean against a basket, or get an electric cart that drives around.  (AR 45.)  If an electric cart is not available, she can walk up and down the aisles of a store by leaning on the cart.  (AR 48.)  The heaviest item she can lift by herself at the grocery store is a twelve-pack of sodas, but someone will help her with it at home.  (*Id.*)

She is not involved in any outside activities, like church or social groups. (AR 48.)  She does not have any hobbies or do anything for fun.  (*Id.*)   She spends most of her day watching the gulls or the quails run and the birds fly, and sitting at the smoking table and talking to some of her neighbors.  (*Id.*)

### 3.    July 5, 2024 Hearing

At the July 5, 2024 hearing, Plaintiff testified about her problems and limitations as follows:

She does not drive as much and only goes to the store and back.  (AR 1484.) She does not have much difficulty driving, but "just can't be in the car," and is "a mess" after getting out of the car.  (*Id.*)  She explained that by "mess," she means that her "body hurts," and described how she felt after being a passenger in a car for a long trip to see a doctor, noting that she "couldn't even move" in getting out of the car, and that "it was like [her] whole body just stiffened up."  (*Id.*)  She:

///

10

> felt like [she] was just arthritic or from top-to-bottom . . .
> [she] could hardly move. [Her] feet were hurting [her].
> [Her] legs didn't want to move and [she] was just like
> ready to fall out. [He] son had to help [her] and the driver
> had to grab [her] belongings and bring them to the door
> for [her]. It was all [she] could do to get from the car to
> the house and he wasn't that far . . . from the door.

(AR 1485.)

She is unable to work because she tires easily and gets pain in her neck and back, her hands and arms go numb, she gets tremors, her knees refuse to work, her feet start hurting, she gets pain and restlessness in her legs, she gets muscle spasms, she drops things, and she "can't really perform the job as people want [her] to do, as quick as they would like it." (AR 1487.)

By the time of the July 5, 2024 hearing, she had acquired a walker, though it was damaged when delivered, so while she does use it sometimes, it is not that helpful. (AR 1488.) She uses it two to four times per week. (*Id.*)

On a typical day, when she wakes up, her legs are "real sore" and "don't want to move," and she feels "trapped." (AR 1489.) She takes her medicines, figures out what she's going to have for breakfast, then sits down to watch TV. (*Id.*) She walks outside three times a day. (*Id.*) She pays the bills, and if she needs groceries she tries to order from Walmart because they have pickup service, so she just goes to the store to pick up her order. (*Id.*)

Unlike at the time of the previous hearing in 2021, she now has difficulty showering. (AR 1490.) Her feet, legs, and arms get tired, so she got a shower chair and has to sit down at least once while showering. (*Id.*) When she washes her hair, her arms start feeling "real heavy and burning," and she has to pause and rest before finishing. (*Id.*) She also has trouble getting dressed and has to lean against a wall or sit down, because her legs and feet spasm and her legs jerk. (*Id.*)

///

11

Plaintiff and her son, who lives with her and who has multiple sclerosis, try to do the chores around their apartment, but she does the "bare minimum." (*Id.*) They use paper plates and plastic utensils so there are fewer dishes to do. (*Id.*; AR 1491–92.) When she tries to do the dishes, her hands cramp up, her arms get tired, she gets pain in her neck and back, and she drops and breaks a lot of dishes. (AR 1492.) She mostly cooks frozen dinners or meals that can be made in a crockpot because her hands get tired, her arms start shaking, and she gets pain in her neck, back, feet, and legs. (*Id.*) Laundry is difficult because she drops a lot of things, lifting her arms causes pain in her chest, and she moves very slowly. (*Id.*) When she goes for walks, she only goes out for seven to fifteen minutes, depending on the weather, but no longer than 20 minutes. (AR 1493.) Sometimes she gets dizzy when she stands up. (AR 1499.)

### D.   Analysis

In her August 24, 2024 decision, at the first step of the two-step evaluation, ALJ Walls found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 1455.) At the second step, however, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported for the reasons explained in this decision." (*Id.*)

As the ALJ found no evidence of malingering, she was required to provide specific, clear and convincing reasons for rejecting Plaintiff's subjective symptom statements. *See Garrison*, 759 F.3d at 1014–15. The ALJ failed to do so. Instead, the ALJ provided a summary of the medical evidence, without specifically identifying the statements of Plaintiff that the ALJ found not to be credible and explaining what evidence undermines such testimony. This was an insufficient basis to reject Plaintiff's testimony. *See Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (explaining that an ALJ may reject a claimant's testimony about the

12

severity of their symptoms only by providing specific, clear, and convincing reasons for doing so, which "requires the ALJ to 'specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines that testimony.'" (alterations in original) (quoting *Treichler*, 775 F.3d at 1102)); *Brown-Hunter*, 806 F.3d at 494 (finding legal error where the ALJ failed to identify the testimony she found not credible and did not link that testimony to the particular parts of the record supporting her non-credibility determination); *Treichler*, 775 F.3d at 1103 ("The ALJ must identify the testimony that was not credible, and specify 'what evidence undermines the claimant's complaints.'" (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998))).

Defendant contends that the ALJ here provides multiple reasons for discounting Plaintiff's symptom testimony: (1) objective medical evidence inconsistent with the claimed severity of Plaintiff's symptoms; (2) medical opinions and prior administrative findings, including evaluations by agency physicians; and (3) lack of opinions from treating providers stating that Plaintiff had any physical limitations. (Def.'s Br. 5–6.) The problem, however, is that the ALJ does not explicitly use any of these reasons to discount or discredit any particular part of Plaintiff's testimony about her subjective symptoms.

In conducting the two-step evaluation process, the ALJ identifies and summarizes Plaintiff's reported symptoms as follows:

> The claimant alleges disability due to a combination of physical impairments. She reports that she needs to sit and relax because she experiences pain in her back when she is on her feet too much. She further reported that she cannot lift and/or carry items for long and has to sit after standing for about 20–25 minutes. Additionally, she reported that she tires very easy; experiences pain in her neck, back, and feet; experiences numbness in her arms and hands; has restlessness in her legs; and drops items. She testified that she has a walker, but that it was "wrecked" when delivered and although she has not been

13

> able to replace it, she uses it when necessary.  As for her mental health symptoms, she testified that she does not take any mental health medication and is doing good mentally (Hearing; C3E; C6E; C9E; C29E; C37E; C42E; C46E; C47E).

(AR 1454–55.)

The ALJ then recites the boilerplate, second-step conclusion that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (AR 1455.)  The ALJ then summarizes the medical records, beginning with Plaintiff's reports of pain:

> The claimant reported complaints of pain in her back aggravated by prolonged walking, standing, sitting, and bending, with reports of pain radiating into her legs and hips with associated numbness, tingling, weakness, and pain; neck pain with intermittent headaches approximately once per month; and generalized pain that ranged from 3 out of 10 to 9 out of 10 (C8F/33-34; C15F/3; C23F/7; C25F/58, 61, 66; C29F/22; C34F/6; C38F, 3, 12, 21).

(AR 1455.)  The ALJ does not characterize these pain reports as inconsistent with Plaintiff's testimony and does not point to this evidence as a reason to discount any of Plaintiff's testimony.  (*See id.*)

Thereafter, the ALJ simply summarizes the medical evidence of record related to Plaintiff's health issues, along with the medical opinion evidence, without further mention of Plaintiff's subjective symptom testimony or reports, other than a discussion of her use of the walker.  (*See* AR 1455–58.)  For instance, the paragraph of the ALJ's opinion immediately following the one quoted just above summarizes various diagnostic imaging studies, but does not characterize any of these images as inconsistent with Plaintiff's testimony and does not point to any of this evidence as a reason to discount any of Plaintiff's testimony.  (*See* AR 1455.)

The next paragraph of the opinion begins by stating that "[o]bjective examinations support that the claimant experiences some limitations due to her musculoskeletal impairments, as well as symptoms related to her diabetes, but the objective findings are not consistent with the extent of limitations alleged by the claimant." (*Id.*)  While the next sentence starts with the words, "[f]or example," however, the rest of the sentence provides a list of findings that appear to support Plaintiff's claims, not undercut them, including:  tenderness, discomfort, pain, limited range of motion, positive straight leg raising bilaterally, sensory deficits, decreased muscle mass and tone, numbness, impaired sensation, and crepitus.  (*Id.*)  After nine and a half lines of text summarizing findings that appear to support Plaintiff's claims, the ALJ gives a few examples of more normal findings.  (*Id.* at 1455–56.)  The ALJ then recounts that some of Plaintiff's providers have noted she has a "normal gait" while "on a few occasions, they noted some gait disturbances and/or some difficulty transferring from sitting to standing and standing to sitting." (*Id.* at 1456.)  After noting that "there is no evidence that the claimant has a history of falls," the ALJ then proceeds straight to crafting limitations on Plaintiff's functional capacity.  (*Id.*)  While this paragraph could be said to identify some inconsistencies—or at least variance—in Plaintiff's medical records, however, nowhere in this paragraph does the ALJ explain which of Plaintiff's subjective complaints is discounted or discredited by any of the cited evidence.  (*Id.*)

The next paragraph of the ALJ's opinion summarizes the medical record evidence regarding Plaintiff's respiratory impairments, but does not characterize any of this evidence as inconsistent with Plaintiff's testimony and does not point to any of this evidence as a reason to discount any of Plaintiff's testimony.  (*See* AR 1456.)  Similarly, the next paragraph summarizes the medical record evidence regarding Plaintiff's coronary artery disease, but does not characterize any of the evidence discussed in this paragraph as inconsistent with Plaintiff's testimony and does not point to any of this evidence as a reason to discount any of Plaintiff's

testimony, either. (*See id.*) Both of these conditions, however, cause the ALJ to add additional restrictions to Plaintiff's ability to work. (*Id.*) The same is true of the next paragraph, which summarizes the medical record evidence regarding Plaintiff's carpal tunnel syndrome, but does not characterize any of this evidence as inconsistent with Plaintiff's testimony and does not point to any of this evidence as a reason to discount any of Plaintiff's testimony. (AR 1457.)

The following paragraph concerns Plaintiff's occasional use of a walker as an assistive device. Here, the ALJ does discuss reasons for discounting this testimony. Specifically, the ALJ notes that, for an ALJ to find that "a hand-held assistive device is medically required, there must be medical documentation establishing the need," and that a "documented medical need for an assistive device means evidence from a medical source supports the claimant's need for an assistive device for a continuous period of at least twelve months." (AR 1457.) The ALJ further noted that the burden is on Plaintiff to prove, through clinical evidence, that a device such as a walker is medically necessary, and that here the medical evidence of record did not support that finding. (*Id.*) Thus, the ALJ concludes this paragraph by stating that "the objective medical evidence of record does not support the claimant's allegations of requiring an assistive device for ambulation." (*Id.*) It is worth noting, however, that Plaintiff did not quite testify that she *requires* a walker, just that she has a damaged one that she uses two to four times per week. (AR 1488.) The ALJ's opinion does not suggest that she believed Plaintiff to be lying about sometimes using the walker; rather, the opinion just finds that the medical evidence of record would not support any claim that Plaintiff required an assistive device to walk around. (*See* AR 1457.) Further, Plaintiff did not request a walker until June 5, 2023 (*see* AR 2682–85), which is after March 19, 2023, the date on which the ALJ found that Plaintiff became disabled. At the 2021 hearing, prior to the date on which Plaintiff has now been found to have become disabled, Plaintiff testified that she did not have to use a cane or other device to help her walk, as long as she can

sit and relax for a minute when needed.  (AR 45.)  While, in theory, the ALJ could have found that Plaintiff's 2024 testimony about her occasional use of a walker was so incredible that it tainted all of Plaintiff's previous testimony about her pain and abilities, the ALJ makes no such finding.  The ALJ nowhere states that her discounting of Plaintiff's testimony regarding use of the walker caused the ALJ to discount Plaintiff's other testimony.  Nor does the ALJ state that her reasons for discounting Plaintiff's 2024 testimony regarding use of an assistive device for ambulation also discredited Plaintiff's testimony regarding any of her other symptoms.  (AR 1457.)

Finally, the ALJ turns to the prior medical opinions and administrative medical findings, specifically summarizing and discussing the opinions of three doctors:  Dr. Michael Minev, the reviewing medical consultant at the initial level who reviewed Plaintiff's medical records in April 2018, but did not examine Plaintiff (*see* AR 128); Dr. April Henry, the reviewing consultant at the reconsideration level who reviewed Plaintiff's medical records in August 2018, but did not examine Plaintiff (*see* AR 1458); and Dr. Jerrold M. Sherman, who conducted an orthopedic consultative examination of Plaintiff in July 2010 (*see* AR 483–88).  (AR 1457-58.)  The ALJ states that she found Dr. Minev's and Dr. Henry's opinions generally persuasive, while noting that new evidence had since been received that neither doctor had considered.  (AR 1458.)  As to Dr. Sherman's findings, however, the ALJ notes that they were outdated and that more recent evidence supported greater limitations than Dr. Sherman had found.  (*Id.*)  Thus, Defendant's citation to Dr. Sherman's findings as supporting the ALJ's decision is not particularly persuasive.  (*See* Def.'s Br. 6.)

After stating that she found the two consulting physicians' opinions generally persuasive, the ALJ finds that "the longitudinal medical evidence is consistent with the opinion that the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently, [and] sit for 6 hours in an 8-hour workday," with no "restrictive

17

limitations with respect to climbing ramps and stairs." (AR 1458.) As the entire basis of the opinion is that the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision" (AR 1455), this appears to be the crux of the issue: that the ALJ did not believe Plaintiff's statements about how long she could sit or stand at a time, and/or how much she could lift or carry, or perhaps that Plaintiff could frequently climb stairs walk up ramps. However, the ALJ never actually says that or identifies any of Plaintiff's statements that might be relevant to these findings.

Yet Plaintiff had testified that she could only sit for 25–30 minutes before having to get up and walk around, or her legs and feet would start to go numb. (AR 68.) Plaintiff had also testified that the heaviest thing she could lift was a gallon of milk or a twelve-pack of soda, both of which are much closer to 10 pounds than 20, and that someone helps her with the soda packs at home. (AR 48, 68.) She could not walk up a hill without having to stop. (AR 67.) She could not stand up to do chores around her apartment for more than twenty or thirty minutes without sitting down, because her lower back "starts screaming at her like somebody kicked her." (AR 47.) The ALJ, however, does not specifically identify or discuss these statements at all, let alone explain why she chose to discount them. Thus, the ALJ's opinion only implicitly finds that Plaintiff's subjective statements are not credible when compared to the medical evidence or the consulting physicians' opinions. Though she identifies the two consulting physicians' opinions as generally persuasive, the ALJ does not connect either of these opinions to Plaintiff's testimony about her pain, and never states that she rests her adverse credibility determination on these findings.

While it is true that an ALJ does not need to address all of a claimant's statements, line-by-line, ALJs do need to "show [their] work." *Smartt v. Kijakazi*,

53 F.4th 489, 499 (9th Cir. 2022).  Here, however, the ALJ did not "show [her] work," as did the ALJ in the *Smartt* case.  There, the ALJ explicitly "identified a direct contradiction in [the claimant's] testimony" as well as "specific discrepancies between [the claimant's] testimony and the objective medical evidence."  *Smartt*, 53 F.4th at 497–98.  In contrast, in the instant case, the ALJ's opinion lacks the necessary showing and does not include "a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [Plaintiff's] testimony."  *Tommasetti*, 533 F.3d at 1039.

It is well-settled that a reviewing court may not construe an ALJ's general findings from the medical record as reasons to reject a claimant's subjective symptom testimony if the ALJ does not explicitly tie such findings to the testimony.  *See Burrell*, 775 F.3d at 1139 (rejecting the government's argument that claimant's history of treatment for headaches is a specific, clear, and convincing reason to support the ALJ's credibility finding because "[a]lthough the ALJ made findings . . . concerning [c]laimant's treatment for headaches, he never stated that he rested his adverse credibility determination on those findings"); *Treichler*, 775 F.3d at 1102 ("We require the ALJ to specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines the testimony.  That means [g]eneral findings are insufficient." (alterations in original) (citations and quotation marks omitted)); *Brown-Hunter*, 806 F.3d at 494 ("[The ALJ] did not link that testimony to the particular parts of the record supporting her non-credibility determination.").

The only instance in which Plaintiff's testimony is explicitly discounted is with respect to her walker use.  The fact remains, however, that the ALJ did not actually state that she found Plaintiff's entire testimony not to be credible because of this inconsistency.  The Court would be required to assume that, because the ALJ viewed the medical sources as inconsistent with Plaintiff's testimony regarding her walker use, the ALJ found that Plaintiff's testimony regarding her symptoms was,

in general, not credible.  This is not "sufficiently specific" to allow this Court to conclude that the ALJ rejected all of Plaintiff's testimony on permissible grounds and did not arbitrarily discredit her testimony regarding pain.  *See Brown-Hunter*, 806 F.3d at 493.

Finally, the Court notes that Defendant also offers as support for the ALJ's decision the assertion that "Plaintiff did not submit medical opinions from any treating medical providers stating that she had any physical limitations, let alone limitations beyond her restrictive RFC."  (Def.'s Br. 6.)  However, the ALJ never made such a finding, let alone state that this was factor in her decision.  (*See generally* AR 1448–61.)  The Court may review only those reasons that the ALJ specifically cited as grounds to reject Plaintiff's subjective symptom testimony.  *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts."); *Garrison*, 759 F.3d at 1010 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").  Accordingly, none of the reasons advanced by Defendant can constitute a specific, clear and convincing reason supported by substantial evidence for discounting Plaintiff's subjective symptom testimony.

* * *

The subjective symptom evaluation standard requires that an ALJ "show his work."  *Smartt*, 53 F.4th at 499.  In this instance, the ALJ did not provide the "sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited," nor can the error be found harmless.  *Brown-Hunter*, 806 F.3d at 494.  Because Plaintiff's subjective symptom testimony was not rejected for clear and convincing reasons based on substantial evidence, reversal of that part of the ALJ's opinion finding that Plaintiff was not disabled from January 18, 2018 through March 18, 2023 is warranted.

20

**E.      Remand for Further Proceedings**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion.  *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  *See id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").  However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate.  *See McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011).  Specifically, remand is warranted here for reconsideration of Plaintiff's symptom statements regarding her pain and limitations because the ALJ's failure to provide legally sufficient reasons for discounting such statements in the decision prevents this Court from meaningfully determining whether the decision is supported by substantial evidence. *See Treichler*, 775 F.3d at 1103 ("Because 'the agency's path' cannot 'reasonably be discerned,' . . . we must reverse the district court's decision to the extent it affirmed the ALJ's credibility determination." (citation omitted)).

**V.      ORDER**

The Court **ORDERS** that judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings.

**IT IS SO ORDERED.**

DATED: March 24, 2026      _____

HONORABLE MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE